## IN THE CIRCUIT OF THE FIFTEENTH JUDICIAL
## CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA
### CIVIL CASE NO.:

DEIRDRE M. JACOBS,

        Plaintiff, ·

vs.

CITY OF WEST PALM BEACH,
FLORIDA,

        Defendant.

_____/

50  2016 CA 004833 XXXX MB   

COPY
ORIGINAL RECEIVED FOR FILING
MAY 0 2 2016
SHARON R. BOCK
CLERK & COMPTROLLER
PROBATE DIVISION

## COMPLAINT
### (Jury Trial Demanded)

    **COMES NOW** Plaintiff **DEIRDRE M. JACOBS** (hereinafter also referred to as "Plaintiff Jacobs," "Plaintiff," or "Ms. Jacobs"), in proper person, and herewith files this her Complaint and Demand for Jury Trial against the City of West Palm Beach, Florida (hereinafter referred to as the "City"), in the above captioned matter as follows:

### A. PRELIMINARY STATEMENT

    1.  This is an action for declaratory, permanent injunctive and monetary relief brought by Plaintiff, **DEIRDRE M. JACOBS**, to seek redress for the deprivation of rights, secured her under 42 U.S.C. §1981, (as amended by the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071[42 U.S.C. §1981 (a)]) by the City, her former employer, that subjected her to racially disparate treatment. The unlawful actions of the City has caused Plaintiff extensive loss of economic and professional opportunities, extreme mental anguish, outrage, depression, painful embarrassment among her friends, family, and former fellow

1



employees, stress-induced insomnia, humiliation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.[1]

### B. JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matters of this action as the request for damages exceeds $15,000.00, exclusive of costs and attorneys' fees.

3. Venue is proper in Palm Beach County, Florida, pursuant to Section 47.011, Florida Statutes (2011) because the causes of action, and all acts and omissions giving rise to the claims and other adverse actions relevant to this cause, accrued in Palm Beach Florida County, Florida, which is also the location of City's principal place of business.

### C. PARTIES

4. Plaintiff Jacobs is a citizen of the United States of America and resides in West Palm Beach, Florida, was employed by the City as its Housing and Community Development Program Manager, until on or about September 29th, 2012.

5. Defendant City is a municipality in Palm Beach County, Florida, and is a covered person for purposes of 42 U.S.C. §1981.

### D. FACTUAL ALLEGATIONS

6. Ms. Jacobs earned a Master of Science degree in Public Administration, specializing in planning and budgeting, from Florida State University, in 1990.

7. From 1990 to 1992, Ms. Jacobs served in the employ of the City as an Associate Planner in its Planning and Zoning Department.

---

[1] Although the factual allegations regarding the creation of position of Housing and Community Development Project Administrator in 2014 relate to the department where Plaintiff previously worked, the City has declared that the filling of that position was unrelated to any claims raised by Plaintiff in separate litigation, *Jacobs v. City of West Palm Beach, Florida,* Civil Action, No. 14-80964-CIV-Rosenberg/Brannon(DE#105, p.9, Footnotes 4-8).

8. From 1992 to 1994 she worked in the City's Department of Housing and Community Development ("Department of HCD" or "Housing Department") as an Associate Housing Planner.

9. In 1994, Ms. Jacobs was promoted to the position of Economic and Community Development Program Coordinator in the Housing Department, and served in that position until 2005 when she was promoted to the position of Housing and Community Program Manager ("HCD Manager").

10. The City informed Ms. Jacobs in September of 2012 that, "Due to economic conditions and budgetary shortfalls, many cutbacks have become necessary. We regret to inform you that the position you hold as Housing and Community Development Programs Manager at the Department of Housing and Community Development has been eliminated."

11. Ms. Jacobs was eventually laid off from the City on or about November 1st, 2012, retroactive to September 29th, 2012.

12. Ms. Jacobs's position as the HCD Coordinator, was a covered position in the City's Collective Bargaining Agreement with the Professional Managers and Supervisors Association ("PMSA").

13. Ms. Jacobs had a right to return to her former position as the HCD Coordinator, if the position was available, or if she had "bumping" rights.

14. The City made an implicit determination that Ms. Jacobs' former position as the HCD Coordinator was not available for her.

15. When Ms. Jacobs was promoted to the HCD Manager's position, she did not continue to accumulate rights under the PMSA, but she did not lose accrued rights, and under Article 11 of pertinent Collective Bargaining Agreement, it states, in its seniority and layoff articles, that "an employee whose position was eliminated," is first given the opportunity to displace or "bump the least senior employee within the same job classification." Article 11, Section 3.

16. Ms. Jacobs, while laid off, retained return rights under certain circumstances. Section 7 of the PMSA Collective Bargaining Agreement states that "no new employees shall be employed

3

in the affected positions during the two year period of recall until the layoff employees have been provided an opportunity to fill that previously held positions."

17. The duties and responsibilities performed by Ms. Jacobs while she held the positions of HCD Manager and HCD Coordinator were assigned to Community Redevelopment Associates of Florida, a consultant group hired by the City to assist with executing some of the functions of the Housing Department.

18. On or about May 7th, 2014, the City's Mayor, Jeri Muoio, fired Community Redevelopment Associates of Florida ("CRA Consultants"). The firing occurred five days after The Palm Beach Post newspaper reportedly asked the CRA Consultants to explain a series of botched or altered documents linked to keeping $209,000 in federal housing money.

19. One of the primary responsibilities of Ms. Jacobs while employed as the HCD Manager and HCD Coordinator was to ensure the Housing Department's compliance with grant conditions, of the federal Department of Housing and Urban Development ("HUD"), of properly and timely spending hundreds of thousands of dollars in housing money earmarked for West Palm's poorest neighborhoods.

20. While CRA of Florida provided services to the City's Housing Department, money allocated under one HUD program was changed to the HUD program facing the time limits on making expenditures. This change made it appear that the federal deadline was being met. When housing moneys are not timely and properly spent, the City risks not only losing the grant, but also reimbursing HUD. These type of irregularities never occurred under any program for which Ms. Jacobs was responsible.

21. In response to the immediate needs of the HCD Department, occasioned by the sudden firing of the CRA of Florida, the City, on or about May 12th, 2014, amended its Salary Plan for the fiscal year 2013-14, and created the job classification of Housing

4

and Community Development Project Administrator ("Housing Project Administrator) for its HCD Department.

22.     The City's stated purpose of creating the position of Housing Project Administrator was to ensure continuity of operations and strengthen the system of internal controls, and because it was in the City's best interest to have a City employee in the Housing and Community Development Department to oversee its day to day operations, and manage employees, outside management consultants and contractors.

23.     The City declared that the decision to eliminate the Ms. Jacobs' HCD Program Manager's position, and requiring her lay off, was part of an organizational restructuring in order to fully utilize the services of the outside consultant group, CRA of Florida, to administer the HCD department, and for related budgetary concerns.

24.     When the City suddenly fired CRA of Florida on May 7th, 2014, for reasons relating to the referenced irregularities, it immediately lost the services of the entity that was responsible for the critical services in the areas in which Ms. Jacobs had a proven track record, and had demonstrated considerable experience; that is,  the development, management and implementation of federal and State funded projects including, but  not limited to, Housing Opportunities for Persons with AIDS (HOPWA)(budget generally exceeding $3,000,000 and available to residents and sub-recipients in the entire county),Community Development Block Grant (CDBG)(budget generally between $700,000 and $1,000,000), Florida State Housing Initiatives Partnership (SHIP)(a project for which Ms. Jacobs wrote the original local housing assistance plan (LHAP) in 1992 and prepared all responses to their audits for over 15 years).

25.     The sudden departure of the CRA of Florida also created a void in another area

where Ms. Jacobs served the City. Since 2010 she was involved with the lower budgeted Neighborhood Stabilization Program (NSP) and Home Investment Partnership (HOME) although to a lesser degree than the others in the preceding paragraph, and primarily in a supervisory role to staff engaging in income verification and loan processing.

26.     In order further to fill the void left by the sudden departure of the CRA of Florida, the City also made available employment opportunities in the HCD Department by inviting Requests for Quote ("RFQ") RFQ 13-14-Q318, Programmatic Compliance Monitoring Federal and State Housing Programs ("Compliance Monitors").

27.     The Compliance Monitors' opportunities also called for the provision of services which Ms. Jacobs provided before her layoff – because of, according to the City, the hiring of the dismissed CRA of Florida: monitor CDBG, HOPWA, HOME/SHIP, and HOME CHDO Projects public services sub-recipients determine program and financial performance and regulatory compliance.

28.     The purposes of Ms. Jacobs' prior positions in the City's HCD Department for over twenty years included, and were reflective of, the purposes of then newly created positions of HCD Project Administrator, a prospective City employee, and Compliance Monitors, other outside consultants.

29.     While the salary scale for the HCD Project Administrator's position was lower than that of Ms. Jacobs's prior position as the HCD manager, and the responsibilities relatively less, the essential functions of the position were similar. The summary of the positions are identical, and both summarize the positions as follows:

> Under general supervision, this position administers, oversees and coordinates all housing and community service projects and activities to ensure compliance with applicable programs and fiscal regulations and guidelines for the Community Development Block Grant Program;

6

develops and designs guidelines and procedures; prepares agenda items, status reports, grant applications and other documents; may perform related duties as assigned.

30.     From the time of her being notified that she was being laid off from HCD Department, in September 2012, to the time the Project Administrator's position was created, in May 2014, Ms. Jacobs continuously informed the City of her interest in returning to the HCD Department, and in continuing to serve the residents of the City, in community housing, as she had for more than two decades.

31.     On or about May 30th, 2014, when Ms. Jacobs learned that City was going to re-create the position from which she was laid off (with some slight modifications of the job responsibilities and title of position), she submitted a public records request to the City, specifically inquiring about whether and when the position would become available, the qualifications and process for applying, and the standards to be used in making the selection.

32.     On or about June 5th, 2014, the City informed Ms. Jacobs, in reference to documents of the decision making process/standards to be used to make the selection for the HCD Administrator, that there were no documents responsive to the request.

33.     On or about May 16th, 2014, within the two-year time frame of Ms. Jacobs return rights from lay off provided for in the City's PMSA Collective Bargaining Agreement, the City, by and through its City Administrator Jeffrey Green, white male, offered the HCD Administrator's position to Jennifer Ferroil, a white Hispanic female, who, just two weeks before being selected, worked for the CRA of Florida as a community liaison for approximately one year – the highest position she held with that company.

34.     The employment offer to Ms. Ferroil provided an effective date of June 2nd,

2014, three days before Ms. Jacobs submitted a written request for information about the application process.

35. The City requested and received a pre-employment background screening on Ms. Ferriol on May 15th, 2014, even though she did not apply for the position until May 16th, 2014, the same day it was offered to her.

36. The City failed to announce publicly, or to post a vacancy bulletin of the then newly created HCD Project Administrator's position it was seeking to fill.

37. The City's refusal to inform Ms. Jacobs that it was seeking to fill the then newly created position of Project Administrator, or provide her with an equal opportunity to apply for it, was intentional.

38. Approximately one week after Ms. Ferriol's selection, when it was still rumored – but not publicly announced – Ms. Jacobs submitted another public records request to obtain documents about the City's decision and the rumored selectee, and the City eventually responded on June 10th, 2014.

39. If Ms. Jacobs had been given an opportunity to apply for position of HCD Project Administrator, she would have done so, and would have accepted the position had it been offered.

40. The City was well aware not only of Ms. Jacobs' continuing interest in being reemployed by the City – providing the exact services, and more – that was required of the HCD Project Administrator, but it was also well aware that she was most qualified for the position, by virtue of her having performed the position's duties and responsibilities in exemplary manner for over a decade, and immediately before her involuntary layoff.

41. If the City had compared the training, education, proven abilities and

experience of Ms. Jacobs with Ms. Ferriol's for the Project Administrator's position, it would have noted that at the time Ms. Jacobs began working in the Housing & Community Development Department, and possessing a Master's degree in public administration, Ms. Ferriol was not yet even in kindergarten. The difference in the qualifications, for the Project Administrator's position, between the Ms. Jacobs, an African-American woman, and the white Hispanic selectee, was so great that no reasonable person would have selected Ms. Ferriol over Ms. Jacobs, if the decision was based on the qualifications published by the City.

42.     Ms. Ferriol, based on the City's published minimum qualifications for the Project Administrator's position, was not even minimally qualified. The listed criteria required, among others, a "Bachelor's degree . . . with a major in Business Administration, Planning, Public Administration, Social Science or related field and five (5) years progressively responsible experience in housing, community development and special needs grant programs . . . or equivalent combination of training and experience . . . ."

43.     Ms. Ferriol, by her own application, lacked a Bachelor's degree, and predicted that she would not have earned it until May 2015.

44.     According to the documents Ms. Ferriol submitted to the City, she also lacked the subject matter and progressively responsible supervisory experience. If Ms. Ferriol did have equivalency in subject area, she was still unqualified according to the City's own published standards.

45.     Ms. Jacobs' race was a substantial and motivating factor in being denied an equal opportunity to apply and/or be considered and/or be selected for the Project Administrator's position.

46.     The City has engaged in a pattern and practice of making unlawful employment decisions that disparately and adversely affected African American females, and the discrimination against Ms. Jacobs complained of herein is but an integral part of such unlawful pattern and practice.

### D. CLAIM FOR RELIEF

<u>Count I</u>
<u>(Race Discrimination: 43 U.S.C. Section 1981)</u>

47.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-46 above.

48.     The allegations of the Defendant's acts and practices described above constitute a violation of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ;42 U.S.C. §1981(a), under the theory of disparate treatment.

49.     As a direct, foreseeable, and proximate result of the City's willful and or intentional conduct and/or acts or omissions as described herein, Ms. Jacobs has suffered and will continue to suffer emotional, mental anguish and distress, outrage, and anxiety about her future ability to support herself and her family, harm to her employability and earning capacity; embarrassment among friends, and colleagues; undermining of self-esteem and motivation, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life such as she is entitled to and has suffered general and compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays that this Court enter a judgment in her favor and against Defendant City of West Palm Beach, as follows:

(a) That a finding be entered that the City intentionally discriminated against Ms. Jacobs because of her race in violation of her rights secured under 42 U.S.C. 1981;

(b) That Ms. Jacobs be awarded all wages, benefits, and compensation due to City's acts of unlawful discrimination;

(c) That Ms. Jacobs be reinstated and/or recalled to the City's employed and be placed and/or promoted to positions denied, and to positions to which she would have attained, absent the unlawful discrimination with retroactive and attendant benefits;

(d) That Ms. Jacobs be awarded compensatory damages in excess of $100,000 dollars or in an amount that the jury deems appropriate; and

(e) That Ms. Jacobs be awarded reasonable attorney's fees and costs, prejudgment interest, a trial by jury and such other relief as the Court deems just and proper.

## Count II
### (Family and Medical Leave Act – Retaliation)

50. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-43 above.

51. This cause of action against the City is for its retaliation, in May 2014, against Plaintiff for exercising her rights under the Family and Medical Leave Act, 29 U.S.C. § 2615(a) (2), when she challenged her layoff from the City in 2012.

52. As a direct and proximate result of the City's unlawful retaliatory action, Plaintiff was not selected for the Project Administrator's position and was denied opportunities to same including ability to earn income, pay increases, and benefits associated with and provide through employment with the City.

53. Further, as a direct, foreseeable, and proximate result of the City's willful and intentional conduct Plaintiff will continue to lose substantial income including, but not limited to, past and or future wages, as such that Plaintiff requests an award of back and front pay as determined by the proofs.

11

**WHEREFORE,** Plaintiff prays that this Court enter a judgment in her favor and against Defendant City of West Palm Beach, as follows:

    (f) That a finding be entered that the City willfully retaliated against Ms. Jacobs because the exercise of her rights secured under 29 U.S.C. § 2615(a) (2);

    (g) That Ms. Jacobs be awarded all wages, benefits, and compensation due to City's acts of unlawful retaliation;

    (h) That Ms. Jacobs be reinstated and/or recalled to the City's employed and be placed and/or promoted to positions denied, and to positions to which she would have attained, absent the unlawful discrimination with retroactive and attendant benefits;

    (i) That Ms. Jacobs be awarded liquidated damages because of the willfulness of the violation of her FMLA rights protected by 29 U.S.C. § 2615(a) (2); and

    (j) That Ms. Jacobs be awarded reasonable attorney's fees and costs, prejudgment interest, a trial by jury, and such other relief as the Court deems just and proper.

Respectfully submitted,

**Deirdre Jacobs,** *pro se*
**3834 Shelley Road North**
**West Palm Beach, Florida 33407**
**Telephone: (561)574-2606**
**Email: allendeirdre95@gmail.com**

**Dated: May 2nd, 2016**